## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| HAYDN GABRIEL LOHSE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:21-CV-00143-RWS-JBB |
| | § | |
| UNUM LIFE INSURANCE COMPANY | § | |
| OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Before the Court are Defendant Unum's Objections to the Magistrate Judge's Report and Recommendation. Docket No. 50. The objections have been fully briefed. Docket No. 51. Unum's objections address arguments from the parties' dueling motions for summary judgment (Docket Nos. 21, 22) regarding Plaintiff's ERISA claim for wrongful denial of benefits.

The main issue in this case is causation. The parties focus the majority of their briefing on the question of whether the specific exclusion language in the insurance policy here bars recovery of benefits based on more indirect causes (*e.g.*, narcolepsy caused sleep that caused a car wreck that caused trauma that caused death) or only bars recovery of benefits based on a proximate cause or concurrent proximate causes. Agreeing with the Magistrate Judge's findings, the Court finds that the insurance policy's exclusion language here only bars recovery of benefits based on a proximate cause or concurrent proximate causes, and the policy holder's narcolepsy functioned as an indirect cause that is too remote to bar recovery of accidental death benefits under the disease exclusion. This Order also addresses Unum's additional arguments in their objections and the unobjected-to findings and conclusions of law in the Magistrate Judge's Report and Recommendation.

## BACKGROUND

This case is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). The parties dispute whether Plaintiff Haydn Gabriel Lohse is entitled to accidental death benefits under a group policy sponsored by his deceased brother's employer and issued by Defendant Unum Life Insurance Company of America. Docket No. 21 at 3; Docket No. 22 at 3. Jay Lohse ("Mr. Lohse") passed away on November 29, 2019, due to blunt force trauma to the head resulting from a car accident. Docket No. 21 at 5–7; Docket No. 22 at 3. At the time of his death, Mr. Lohse was an employee of Central Research Inc. Docket No. 21 at 3; Docket No. 22 at 3. Plaintiff is the beneficiary under two group insurance policies that Unum issued to Central Research. *Id.* The policies provide life as well as accidental death and dismemberment ("AD&D") coverage, and Plaintiff made a claim for both types of benefits following the death of his brother. *See id.* Although Unum determined that Plaintiff was entitled to $142,000 in life benefits, Unum determined Plaintiff was not entitled to AD&D benefits under the policy because one or more coverage exclusions apply. Docket No. 21 at 1. Plaintiff filed this suit in November 2021, seeking judicial review of Unum's denial of AD&D benefits. Docket No. 1. Plaintiff asserts claims for (1) wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). *Id.*

Plaintiff and Unum filed dueling motions for summary judgment. Docket Nos. 21, 22. On August 14, 2023, the Magistrate Judge issued a 49-page Report and Recommendation ("R&R"), recommending both motions be granted-in-part and denied-in-part. Docket No. 44.

Pursuant to *de novo* review, the Magistrate Judge found that Unum had not met its burden of proving a policy exclusion bars Plaintiff's accidental death benefit recovery. *Id.* at 1–2. Therefore, the Magistrate Judge recommended Unum's motion for summary judgment be denied,

and Plaintiff's motion for summary judgment be granted, as to Plaintiff's claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 46. However, the Magistrate Judge recommended Unum's motion for summary judgment be granted, and Plaintiff's motion for summary judgment be denied, as to Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). *Id.* at 47. Finally, the Magistrate Judge found Plaintiff's claim for attorney's fees and costs was premature. *Id.* at 48. The Magistrate Judge therefore recommended Plaintiff's motion for summary judgment as to Plaintiff's claim for attorney's fees and costs under 29 U.S.C. § 1132(g)(1) be denied without prejudice to refiling. *Id.* Unum filed objections to the R&R. Docket No. 50. Plaintiff filed a response to the objections. Docket No. 51.

## LEGAL STANDARD

### I.      Standard of Review

A district court conducts a *de novo* review of any portion of a magistrate judge's report and recommendation to which any party files an objection. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). After conducting a *de novo* review, the district court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

### II.     Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co*., 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 424 (5th Cir. 2000).

### III.    Relevant ERISA Law

"ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim." *Taylor v. Unum Life Ins. Co. of Am*., No. CV 21-331-JWD-EWD, 2023 WL 2766018, at *12 (M.D. La. Mar. 31, 2023) (quoting *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007) (citation omitted in *Taylor*), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. C*o., 560 U.S. 242 (2010)). "These procedures are set forth in 29 U.S.C. § 1133 and the regulations promulgated by the Department of Labor thereunder." *Id.* The statute requires every employee benefit plan governed by ERISA to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied" and "afford a reasonable opportunity" for a "full and fair review" of the denial. *Id.* (quoting 29 U.S.C. § 1133). A plan administrator must substantially comply with

ERISA procedures. *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 272 (5th Cir. 2022) (citing *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006)). Technical non-compliance is excused if the purposes of Section 1133 are fulfilled. *See id*. Those purposes include promoting resolution of the dispute at the administrative level and facilitating a meaningful dialogue between the plan administrator and the beneficiary. *Id.* Section 502(a)(1)(B) provides a cause of action for a participant or beneficiary to seek judicial review of an administrator's benefits determination. 29 U.S.C. § 1132(a)(1)(B). The standard of judicial review afforded ERISA benefits determinations depends upon whether a plan administrator is vested with certain discretionary authority. Absent a valid delegation clause vesting the claims administrator with discretionary authority, the standard of judicial review for ERISA benefits denials challenged under 29 U.S.C. § 1132(a)(1)(B) is *de novo. Gray v. Minnesota Life Ins. Co.*, No. CV H-19-4672, 2021 WL 861298, at *1 (S.D. Tex. Mar. 8, 2021) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989); also citing *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (en banc) (adopting the majority approach and holding that the *de nov*o standard in *Firestone* applies when reviewing a denial of benefits regardless of whether that denial is based on legal or factual grounds)).

"Under the *de novo* standard of review, the court's task is to determine whether the administrator made a correct decision.'" *Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d 502, 505 (S.D. Tex. 2021) (quoting *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019) (quoting *Niles v. Am. Airlines, Inc.*, 269 Fed. Appx. 827, 832 (10th Cir. 2008))). The decision to deny benefits is "not afforded deference or a presumption of correctness." *Id.* The court "must stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." *Id.* (quoting

*Byerly v. Standard Ins. Co.*, No. 4:18-CV-00592, 2020 WL 1451543, at *18 (E.D. Tex. Mar. 25, 2020), *aff'd*, 843 Fed. Appx. 572 (5th Cir. 2021) (citation omitted in *Holman*)).

## DISCUSSION

### I.    *De Novo* Review of Unum's Objections to the Magistrate Judge's Report and Recommendation

The parties agree in their summary judgment motions that the standard of review in this case is *de novo*. Docket No. 21 at 20 ("To decide Plaintiff's Section 502(a)(1)(B) claim, the Court applies a *de novo* standard of review to Unum's decision."); Docket No. 22 at 13 ("Due to the fact that Central Research is allocated as Plan Administrator and has no discretionary authority with respect to the decision at issue, the standard of review should be *de novo*."). The Court thus applies a *de novo* standard of review.

Plaintiff bears the burden to show by a preponderance of the evidence that he is entitled to benefits. *Hodge v. Guardian Life Ins. Co. of Am.*, No. 4:20-CV-2088, 2021 WL 5142793, at *2 (S.D. Tex. Sept. 10, 2021), *report and recommendation adopted*, No. 4:20-CV-2088, 2021 WL 5143886 (S.D. Tex. Nov. 3, 2021); *see also Lebron v. Boeing Co.*, No. CV H-18-3935, 2020 WL 444428, at *2 (S.D. Tex. Jan. 13, 2020) (under *de novo* review the court independently weighs the administrative record to determine whether the claimant has shown an entitlement to benefits), *report and recommendation adopted sub nom. Lebron v. Boeing Co. Emp. Health & Welfare Plan*, No. 4:18-CV-3935, 2020 WL 430964 (S.D. Tex. Jan. 28, 2020), *aff'd sub nom. Lebron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, No. 20-20165, 2021 WL 1396574 (5th Cir. Apr. 13, 2021). That said, the insurer has the burden of proving an exclusion applies. *Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d 502, 506 (S.D. Tex. 2021) (citing *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998)).

Here, the Magistrate Judge first found Plaintiff met his burden of showing Mr. Lohse died due to an "accidental bodily injury." R&R at 33–35. And the Magistrate Judge found, based on the language of the policy exclusions, that Unum did not meet its burden of proving, by a preponderance of the evidence, that either the disease exclusion or the crime exclusion bars recovery. *Id.* at 46. Regarding the disease exclusion, although the Magistrate Judge found sufficient evidence in the record to show that Mr. Lohse had narcolepsy, the Magistrate Judge found Unum had not established Mr. Lohse's narcolepsy was a proximate cause of the loss. *Id.* The Magistrate Judge explained as follows:

> [T]he Court agrees with Plaintiff that Unum has not established that Mr. Lohse's narcolepsy caused or contributed to Mr. Lohse's death under the terms of the Group Policies (as opposed to causing the accident which caused the death). *See* Dkt. No. 22 at 15; AR 999-1000. Unum does not dispute that the blunt-force trauma from the car accident is what killed Mr. Lohse. But Unum asserts the medical records show that Mr. Lohse had narcolepsy and suffered from hypersomnolence and the crash report attributes being fatigued or asleep as contributing causes to the accident. Dkt. No. 26 at 9. According to Unum, that is sufficient to show that Mr. Lohse's narcolepsy caused, contributed to, or resulted in Mr. Lohse's death. *Id.* Thus, the question is whether the language of Unum's disease exclusion policy excludes coverage for the accidental loss when a disease, like narcolepsy, caused the accident that caused the loss. Put more bluntly, does the disease exclusion exclude coverage for losses that are indirectly (as opposed to proximately) caused by a disease?
>
> Unum's disease exclusion denies coverage for accidental death benefits with respect to "any accidental losses caused by, contributed to by, or resulting from . . . disease of the body. . . ." AR 365, 1098. As explained below, the relevant cases describe this type of language as excluding diseases that are concurrent proximate causes of the loss, not as Unum argues, remote or indirect causes.
>
> The Fifth Circuit has categorized two types of disease exclusion clauses recognized by the Texas Supreme Court – those which apply only when a disease is at least a concurrent proximate cause and those which also apply when the disease was a more remote or indirect cause of the loss. *See Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1337 (5th Cir. 1983) (discussing *Stroburg v. Ins. Co. of No. Am.*, 464 S.W.2d 827, 829–31 (Tex. 1971)). In the first category is the exclusion presented in *Stroburg* which provides that "[t]his policy does not cover loss *caused by or resulting from* any one or more of the following: ... [i]llness, disease ... bodily

infirmity...." *Id.* (emphasis added). These types of exclusions exclude "coverage only where disease is at least ***a concurrent proximate cause***." *Id. (emphasis added).*

For example, in *National Fire*, after considering the two types of exclusions discussed in *Stroburg*, the court concluded that the language of the policy "excluded liability only when the itemized risks were a proximate rather than an indirect or remote cause of the loss." *National Life & Accident Insurance Co. v. Franklin*, 506 S.W.2d 765, 768 (Tex.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). The court further explained as follows:

> The words "contributed to" do not serve to allow us to look back along the chain of causation to a remote cause or a cause of a cause. The words "directly or indirectly" would serve this purpose, but "contributed to" does not avoid the proximate cause requirement of Stroburg. The true effect of "contributed to" is that the disease need only be a proximate cause rather than the [s]ole proximate cause to satisfy the exclusion. Since the epilepsy was, at most, a remote cause, the policy exclusion is inapplicable.

*Id.*

As an example of the second category presented in *Stroburg*, the Texas Supreme Court cites exclusions containing language precluding payment of benefits if disease contributed "directly or indirectly" to the loss. *Sekel*, 704 F.2d at 1337 (citing *Stroburg*, 464 S.W.2d at 831–32). These types of exclusions "effectively exclud[e] coverage where disease, though a functionally closely related significant contributing factor or cause is nevertheless neither a concurrent proximate nor the most immediately precipitating cause of loss." *Id.*

In *Sekel*, the insured fell to the floor and sustained a severe blow to the head, which resulted in his death one hour after the fall. The immediate cause of his death was the blow to his head, but the fall was attributed to a preexisting disease, "severe atherosclerotic and hypertensive cardiovascular disease," a natural condition, which had caused him to pass out and fall to the floor. *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 102 (5th Cir. 1993). The district court awarded accidental death benefits to the beneficiary, finding that the mere fact that the insured's hypertension may have caused him to pass out did not mean that the medical condition caused his death. However, the Fifth Circuit reversed on appeal, concluding the exclusion clause in the policy ("resulting from any injury caused or contributed by, or as a consequence of, any of the following excluded risks, ***even though the proximate or precipitating cause of loss is accidental bodily injury***") was within the second type described in *Stroburg* and barred recovery. *Sekel*, 704 F.2d at 1336-37, 1338, 1342 n. 12 (emphasis added).

Specifically, the court held that the exclusion clause precluded coverage because the "disease" or "bodily infirmity" of the insured caused or contributed to his death,

"even though" his fall was the proximate or precipitating cause of his death. *Id.* at 1337-39. In reaching its conclusion, the *Sekel* court reasoned that

> We conclude that the Aetna exclusion clause is of the second type described in the *Stroburg* decision, and coverage is barred when a risk excluded by the policy is a functionally closely related significant cause or contributing factor of the loss even though a covered risk is the proximate and more immediate precipitating cause. A contrary interpretation disregards the clear and unambiguous meaning of the exclusion clause, especially its "even though" phrase. Mr. Sekel's heart condition, the "natural disease processes" of which caused him to pass out and immediately fall, striking his head and resulting in his death within approximately an hour, certainly bore a functionally close and significant causal or contributory relationship to his death. This is not an instance where for want of a nail the rider was lost. . . .

*Sekel*, 704 F.2d at 1338.

Other courts have pointed out this same distinction in rejecting attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness. *See, e.g.*, *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 831 (10th Cir. 2008) (discussing, among other cases, *National Life & Accident Insurance Co. v. Franklin*, 506 S.W.2d 765 (Tex.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.)). In *Kellog*, the policy included language that is similar to the language found in Unum's policy, specifically providing that "[w]e will not pay benefits under this section for any loss caused or contributed to by: [ ] physical or mental illness or infirmity. . . ." 549 F.3d at 832. The Tenth Circuit concluded under a *de novo* standard of review that the car crash—not the seizure—caused the loss at issue, and therefore the exclusionary clause of the policy did not apply. *Id.* at 829; *see also id.* at 832 ("Here, the loss (Brad Kellogg's death) was caused by a skull fracture resulting from the car accident, not by physical or mental illness. . . . While the seizure may have been the cause of the crash, it was not the cause of Brad Kellogg's death. The Plan does not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness.").

Notably, the Tenth Circuit stated in a footnote that MetLife could have drafted the policy to exclude losses resulting from accidents caused by injury or illness, citing the Fifth Circuit cases of *Sekel* and *Moore* as examples. *Kellogg*, 549 F.3d at 832, n. 5. (citing *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100 (5th Cir.1993) ("A loss that is the result of or contributed to by one of the following is not a covered loss <u>even though it was caused by an accidental bodily injury</u>: (1) A disease or infirmity of the mind or body."); *Sekel v. Aetna Life Insurance Co*., 704 F.2d 1335, 1336–37 (5th Cir.1983) ("[N]o payment shall be made for ... any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the following

excluded risks, <u>even though the proximate or precipitating cause of loss is accidental bodily injury</u>: (a) bodily or mental infirmity; or (b) disease ....￿ (internal quotation marks omitted in *Kellogg*)) (emphasis added).

Unum contends that the phrase "contributed to by" in its disease exclusion broadened it to exclude diseases that are indirect causes of the loss. Dkt. No. 21 at 17, 24, 25-26. However, under the plain reading of the disease exclusion, the "contributed to by" language refers to the loss (the death) without any indication to capture indirect causes (such as the narcolepsy that caused the crash that caused the death). The court in *Kellogg* addressed this very issue, holding that the language excluding "losses that were caused *or contributed* to by physical illness [did] not change this analysis." *Kellogg,* 549 F.3d at 832 (emphasis original). According to the Tenth Circuit, a reasonable policyholder would understand this language to refer to causes contributing to the death, not the accident. *Id.*

Unum cites *Southern Farm Bureau Life Insurance Co. v. Moore* to argue that the phrase "contributed to by" should be interpreted to capture indirect or remote causes. Dkt. No. 21 at 25-26. It is true that the policy exclusion there contained the "contributed to by" phrase, but it also contained an "even though" phrase: "A loss that is the result of or contributed to by one of the following is not a covered loss even though it was caused by an accidental bodily injury: (1) A disease or infirmity of the mind or body." *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100 (5th Cir. 1993). Under the reasoning of *Sekel*, this language has to cover situations where the disease caused the accident but not the injury to give meaning to the "even though" phrase. *See Sekel*, 704 F.2d at 1338. However, Unum's policy does not exclude losses resulting from accidents caused by disease. Rather, it excludes "accidental losses caused by, contributed to by, or resulting from: disease of the body. . . ." AR 364-65.  It does not convey any intent to exclude diseases that indirectly cause the loss, such as the "even though" phrase contained in both *Sekel* and *Moore*.

Here, as explained above, the loss (Mr. Lohse's death) was caused by blunt-force trauma to the head resulting from the car crash, not by physical illness. While narcolepsy may have been the cause of the crash, it was not the cause of Mr. Lohse's death. Accordingly, Unum was incorrect in concluding that the disease exclusion applies.

*Id.* at 38–44 (internal footnotes omitted).

Unum objects to the Magistrate Judge's conclusion that "Unum was incorrect in concluding that the disease exclusion applies," R&R at 44, and the reasoning in support thereof, *id.* at 38–44. According to Unum, the Group Policies exclude coverage where there is a direct, unbroken line of causation between disease and a bodily injury. Docket No. 50 at 2. Unum

contends Mr. Lohse's narcolepsy was not "too remote" from the loss so as to preclude coverage. *Id.* at 3. Relying on *Britt v. Travelers Ins. Co.*, 566 F.2d 1020 (5th Cir. 1978), wherein the Fifth Circuit applied Mississippi law, Unum asserts the terms "cause" and "contribution" mean different things. *Id.*

The exclusion clause in the *Britt* case included an "even though" phrase: "Exclusions—No benefit under this Provision will be payable if death results from or is contributed to by: 1. Any bodily or mental infirmity or disease, even though the proximate or precipitating cause of death is accidental injury." *Britt v. Travelers Insurance Co.*, 556 F.2d 336, 340 (5th Cir. 1977), *modified*, 566 F.2d 1020 (5th Cir. 1978). In that case, the proximate cause of the insured's death was exposure, though the insurance company introduced evidence that his preexisting bodily infirmities had contributed to his death as a nonproximate cause. *See id.* at 343. The Fifth Circuit, interpreting an exclusion clause very similar to the one involved in *Sekel*, stated in its original *Britt* opinion that "Travelers' policy ... prohibit[s] recovery when the disease contributes to the death even though the latent or dormant disease was precipitated and made active by the accident," that is, when it is a nonproximate cause. *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1341 (5th Cir. 1983) (quoting *Britt*, 566 F.2d at 343).

In the modified *Britt* opinion, the Fifth Circuit clarified that Travelers was not required to establish the bodily or mental infirmity "substantially" contributed to Mr. Britt's death. *Britt*, 566 F.2d at 1023. The Fifth Circuit then stated in a footnote as follows:

> "Cause" and "contribution" are alike in that both describe factors that help to produce a result. Although both "cause" and "contribution" indicate a direct connection to a result, a contribution involves a less direct and less immediate connection than does a cause. To be a "cause" of Mr. Britt's death, exposure must have had such an impact on Mr. Britt that his death would not have occurred at that time without the exposure. By contrast, an infirmity or disease would contribute to Mr. Britt's death if it moved the sequence of events toward that result.

> You may decide this case by considering cause and contribution in a two-step process. First, you should decide whether Mr. Britt's death was caused by exposure. The burden is on Mrs. Britt to establish by a preponderance of the evidence that Mr. Britt's exposure was accidental and that without such exposure Mr. Britt would not have died when he did. If the proof does not show that such exposure caused Mr. Britt's death, then Mrs. Britt has not carried her burden of proof and your verdict must be for Travelers.
>
> If the proof shows that accidental exposure caused Mr. Britt's death, then you must make a second decision as to whether Travelers has proved by a preponderance of the evidence that bodily or mental infirmity contributed to Mr. Britt's death. If the proof shows that bodily or mental infirmity contributed to Mr. Britt's death from exposure, then your verdict must be for Travelers. If you are not persuaded that bodily or mental infirmity contributed to Mr. Britt's death, then your verdict must be for Mrs. Britt.

*Id.* at 1023, n. 3.

Unum's reliance on *Britt* does not address the Magistrate Judge's overriding point that the disease exclusion at issue in this case does not convey any intent to exclude diseases that indirectly cause the loss, such as the "even though" phrase contained in both *Sekel* and *Moore*. Indeed, the exclusion at issue in *Britt* contained an "even though" phrase. Unum's policy does not exclude losses resulting from accidents caused by disease. Rather, it excludes "accidental losses caused by, contributed to by, or resulting from: disease of the body. . . ." Administrative Record available at Docket No. 20 [hereinafter AR] at 364–65.

In its objections, Unum states the Group Policies require an injury to be the "direct result of an accident unrelated to any other cause," and exclude coverage for otherwise "accidental losses" that are "caused by, contributed to by, or resulting from" disease. Docket No. 50 at 6. Unum asserts the "unrelated to any other cause" language is the functional equivalent of the "even though" language and expresses the same intent. *Id.* According to Unum, neither *Moore* nor *Sekel* require an "even though" phrase to preclude coverage for a loss directly linked to a disease as in this case. *Id.*

Unum argues the Group Policies demonstrate its intent to exclude causes linked to the loss by more than one causal step. According to Unum, the provisions, when read together, show unambiguous intent to preclude recovery when there is a direct, unbroken causal link between a disease and an accidental bodily injury such that the disease, at the very least, "contributed" to an otherwise "accidental loss." Docket No. 50 at 2. Unum argues the R&R interpretation renders some exclusions surplusage. *Id*. at 3 (noting the crime exclusion contained in the Group Policies would always be at least one step away from a loss). To prove this point, Unum relies on cases cited in the portion of the R&R discussing the crime exception, arguing as follows:

> In *Fulkerson v. Unum Life Insurance Co. of America*, the decedent was speeding, attempted to pass cars on the right, got into a collision, and died of his injuries. 36 F.4th 678, 680 (6th Cir. 2022). Unum "denied [AD&D] benefits under an exclusion for 'losses caused by, contributed to by, or resulting from . . . commission of a crime,'" namely, reckless driving and/or speeding. *Id.* These illegal acts caused the accident, and the accident caused the death, but the court sided with Unum. *Id.* at 686. In *Boyer v. Schneider Electric Holdings, Inc.*, the decedent committed similar crimes, resulting in his car striking a tree. 993 F.3d 578, 580 (8th Cir. 2021). Unum applied an exclusion encompassing, as here, "accidental losses 'caused by, contributed to by, or resulting from . . . an attempt to commit or commission of a crime.'" *Id.* The court agreed with Unum, *id.* at 584, even though the crimes caused the accident that caused the death. *See also Caldwell v. UNUM Life Ins. Co. of Am.*, 786 F. App'x 816, 817 (10th Cir. 2019) (applying identical crime exclusion after speeding driver lost control); *Steele v. Life Ins. Co. of N. Am.*, 507 F.3d 593, 597–98 (7th Cir. 2007) (same where intoxicated decedent died after car crash).

> Courts routinely interpret similar policy language to preclude coverage when manifestations of intoxication cause accidents that cause losses. *E.g., Carrier v. Veterans Life Ins. Co*., 232 F. App'x 379, 380 (5th Cir. 2007) (fall down stairs while intoxicated excluded as a loss "caused by or resulting from" alcohol consumption); *Likens v. Hartford Life & Accident Ins. Co.*, 794 F. Supp. 2d 720, 722 (S.D. Tex. 2011), *aff'd*, 688 F.3d 197 (5th Cir. 2012) (death from fall while intoxicated excluded as "sustained as a result of being legally intoxicated"); *Carter v. ENSCO Inc*., 438 F. Supp. 2d 669, 672 (W.D. La. 2006) (death in collision after decedent fell asleep at wheel excluded as "caused by or contributed to by engaging in an illegal act"). These cases show that if intoxication rather than narcolepsy had caused Mr. Lohse to fall asleep at the wheel, there would have been no coverage. The R&R thus applies a more stringent causal requirement to disease than to other alternative excluded causes. There is no legal basis for giving the same language a different

meaning when applying it to a disease exclusion instead of a crime, drug, or intoxication exclusion.

*Id*. at 4-5.

Although Unum cites cases involving application of a crime, drug, or intoxication exclusion, those cases did not address the "caused by, contributed to by, or resulting from" language in the context of causation. For example, in *Fulkerson v. Unum Life Ins. Co. of Am*., 36 F.4th 678 (6th Cir. 2022), the issue on appeal was whether reckless driving is a "crime" within the meaning of the exclusion. *Id*. at 681. To answer that question, the Sixth Circuit considered dictionaries and the Eight Circuit's decision in *Boyer v. Schneider Electric Holdings, Inc.*, 993 F.3d 578 (8th Cir. 2021), wherein the Eighth Circuit upheld Unum's decision on abuse of discretion review, concluding that the act of "high-speed motoring and improper passing was akin to reckless driving," which qualifies as a "crime" as that term was used in "[c]ommon dictionaries." *Id.* (quoting *Boyer*, 993 F.3d at 581–83). The parties in *Fulkerson* all agreed that Tymoc's reckless driving misdemeanor offense resulted in his death. *Id.* at 681-82; *see also id.* at 682 ("Tymoc nearly collided with one (and perhaps two) other cars while attempting the high-risk passing maneuver that led to his own death.").

The Magistrate Judge, having carefully analyzed the cases addressing a disease exclusion, found the exclusion clause in this case does not reach losses that are indirectly (as opposed to proximately) caused by a disease. According to the Magistrate Judge, narcolepsy may have caused the crash, but it was not a proximate cause of Mr. Lohse's death. Contrary to Unum's assertions, the Court does not find Unum has clearly indicated its disease exclusion applies to both proximate and remote causes such as Mr. Lohse's narcolepsy. *See Sekel*, 704 F.2d at 1340 (discussing *Huff v. Aetna Life Ins. Co.*, 120 Ariz. 548, 552 (Ct. App. 1978)). Even though Unum

defined "accidental bodily injury" as "a bodily injury that is the direct result of an accident and not related to any other cause," Unum's Group Policies do not go further and make it clear that coverage is excluded in the situation where disease is the indirect cause of an accident that was the sole, proximate or direct cause of the loss. *Id.*

Unum's reliance on *Parsons v. Unum Life Ins. Co. of Am.*, No. 3:18-CV-223-MPM-RP, 2019 WL 5213871 (N.D. Miss. Oct. 16, 2019), a non-binding out-of-district case, does not mandate a different result. In that case, the court considered a Unum policy under *de novo* review which mirrored the policy in this case, defining "accidental bodily injury" as "bodily injury that is the direct result of an accident and not related to any other cause" and containing the same disease exclusion ("Your plan does not cover any accidental losses caused by, contributed to by, or resulting from disease of the body. . . ."). *Id.* at *2. There, Mr. Parsons was killed after he lost consciousness at the wheel of his tractor, fell off, and was then run over by it. *Id.* at *1. The plaintiff alleged blunt force trauma to Mr. Parsons' body resulting from the tractor running over him, clearly an accident, was the actual cause of his death. *Id.* at *3.

After discussing *Sekel*, the court in *Parsons* considered whether Mr. Parsons' death was "the direct result of an accident and not related to any other cause" or whether it was, instead, one in which a disease of the body was at least a "contribut[ing]" factor. *Id.* at *2–3. In considering this issue, the court noted at the outset that the plaintiff conceded in her complaint that "[w]hile Mr. Parsons may have suffered a medical event prior to the accident, but for Mr. Parson's daughter, Ms. Hart, attempting to assist her father, he would not have fallen off of the tractor or been run over by it." *Id.*

Given this concession, "there was no serious doubt" in the court's view that "Parsons was unconscious at the wheel of his tractor as the result of a medical event of some sort." *Id.*; *see also*

*id.* at *4 ("In her statement, Hart indicated that her father remained non-responsive at his tractor even after 1) she had shaken him, 2) tried to lift him, 3) after her son had screamed 'mommy' multiple times, and 4) after she herself had fallen from the tractor. Simply stated, this court is unable to imagine a scenario consistent with these facts which does not involve a medical event of some sort. Moreover, while the exact nature of that medical event is unclear, the policy in this case does not require that a precise medical diagnosis have been made.") The court concluded as follows:

> In the court's view, the crucial legal factor in this case is that the policy at issue does not exclude recovery merely in cases where a non-covered medical event was the "actual" cause of death, to the contrary, it excludes recovery in cases where the event "contributed" to or was "related to" to death. In the court's view, if Parsons had not suffered a medical event of some sort, then his daughter would not have climbed on his tractor to aid him, and, in all likelihood, he would still be alive today. Plaintiff comes close to conceding as much in her complaint. This court therefore regards Parson's medical event as being a "but for" cause of his death, which constitutes an even higher level of causal connection than that required by the policy language in this case. That being the case, this court assigns no particular importance to the issue of whether Parsons had turned blue while he was still on his tractor or not. Indeed, this court notes that there are many serious medical emergencies, including heart attacks and strokes, which do not necessarily involve a person turning blue.
>
> As noted previously, plaintiff herself alleges in her complaint, that "but for Mr. Parson's daughter, Ms. Hart, attempting to assist her father, he would not have fallen off of the tractor or been run over by it." [Complaint at 2]. Thus, even under plaintiff's version of the facts, this court can discern no reasonable argument that Parson's medical event did not at least "contribute" or "relate to" his death. Despite plaintiff's attempts to do so, Hart's decision to climb on the tractor cannot be separated, in a causation sense, from the apparent medical event which caused her to take this action in the first place. Thus, this court concludes that Parson's medical event must be regarded as "contributing" to or "related to" his ultimate death, and accidental death benefits are therefore unavailable under the policy language and the Fifth Circuit's decision in *Sekel*.

*Id.* at *5. Under these circumstances, the court was unable to conclude that Parsons died as "the direct result of an accident and not related to any other cause," noting it seemed clear that a medical event at least "contributed" to his death within the meaning of the accidental death policy. *Id.* at *6.

The Court finds *Parsons* distinguishable for at least five reasons. First, Unum failed to properly raise its argument based on *Parsons*. Unum "first argued these issues in [its] objections to the magistrate judge's findings, conclusions and recommendations." *See United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). Therefore, Unum's argument based on *Parsons* is "not properly before the district court[.]" *See id.*

Second, even assuming Unum's argument based on *Parsons* was properly raised, the *Parsons* court applied the reasoning from *Sekel* that a disease or infirmity need not be a concurrent proximate cause without addressing the differences in the language of the policies at issue. *See Parsons*, 2019 WL 5213871, at *3 (quoting *Sekel*, 704 F.2d at 1337–38). As discussed at length in the Magistrate Judge's discussion of the disease exclusion, there are important differences between the language of the exclusions in the *Sekel* policy and the Unum policy. *E.g.*, R&R at 40 (citing *National Life & Accident Insurance Co. v. Franklin*, 506 S.W.2d 765, 767 (Tex.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.)) (explaining that the "contributing to" language in the Unum policy extends its exclusion clause to bar recovery of benefits based on concurrent proximate causes in addition to a single proximate cause, but not more indirect causes). Considering those differences, the Unum policy here bars recovery of benefits based on a proximate cause or concurrent proximate causes, but not more indirect causes.

Third, *Parsons* specifically distinguishes the serious medical event suffered by Mr. Parsons from merely falling asleep. *Parsons*, 2019 WL 5213871, at *4 ("Indeed, the only scenario which this court can imagine which does not involve a medical event is one in which Parsons fell asleep at the wheel of his tractor."). Therefore, even under *Parsons*'s reasoning, Mr. Lohse's narcolepsy that caused him to fall asleep in this case should not qualify as a medical event that would serve as a concurrent proximate cause to the trauma that caused Mr. Lohse's death.

Fourth, as in *Sekel*, Unum does not expressly contest whether Mr. Lohse's accidental bodily injury and death would fall within the terms of the coverage clause. Throughout their briefing, the parties instead focus on whether Unum has met its burden to show that the exclusion clause applies. Therefore, the definition of accidental bodily injury as it relates to the coverage clause, which the *Parsons* court called "ultimately, the deciding factor in" *Parsons*, lacks relevance to the contested issues here under the exclusion clause. *See Parsons*, 2019 WL 5213871, at *2.

Fifth, even if Unum did contest whether Plaintiff had met his burden of showing Mr. Lohse died due to an "accidental bodily injury," the Court would not find, under *de novo* review of the Administrative Record in this case, the high level of causal connection that the *Parsons* court found based on but-for causation. Indeed, recovery of benefits would not be precluded here because the "preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury."[1] *See Stroburg v. Ins. Co. of No. Am.*, 464 S.W.2d 827, 829 (Tex. 1971).

---

[1] In *Mutual Benefit Health & Accident Association v. Hudman*, 398 S.W.2d 110 (Tex. 1965), the Texas Supreme Court held that, to recover benefits under an accidental-death policy that limits coverage to death from an accidental injury "independently of other causes," the accident must be the "sole proximate cause" of death. *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 892–93 (5th Cir. 2018) (citing *Hudman*, 398 S.W.2d at 112–13). In articulating the "sole proximate cause" theory of causation in *Hudman*, the Texas Supreme Court cited a leading Texas insurance authority, which "cogently summarized" the rule as follows:

> As a general rule, it has been stated that if there is a *pre-existing disorder or illness* at the time an injury is received, recovery may still be had if the injury was severe enough to have caused the entire damage or considerable damage, but not if the disease was the proximate cause or principal cause thereof.

*Id.* at 894 (quoting *Hudman*, 398 S.W.2d at 114 (quoting 1A Appleman, Insurance Law and Practice, § 403)). In other words, recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury. *Hudman*, 398 S.W.2d at 114.

In sum, the Court is not convinced the disease exclusion's language ("any accidental losses caused by, contributed to by, or resulting from . . .  disease of the body. . . ") is broad enough to apply regardless of whether the disease is a proximate cause of the loss. The policy lacks specific language to capture more indirect causes, such as "directly or indirectly" or "even though" phrases. Therefore, the policy's exclusion clause here only bars recovery of benefits based on a proximate cause or concurrent proximate causes, but not more indirect causes. And unlike the heart condition in *Sekel*, which was not transient and was a "very severe disease," *id.* at 1338-39, the record here does not show that Mr. Lohse's narcolepsy was a concurrent proximate cause of Mr. Lohse's death. Mr. Lohse's narcolepsy was merely a cause of a cause and was too remote to bar recovery. *See National Life*, 506 S.W.2d at 767. For all these reasons, Unum's first objection is overruled.

Unum further objects to the conclusion that Unum did not "meet its burden of proving, by a preponderance of the evidence, that the crime exclusion applies," R&R at 45, and the reasoning in support thereof, *id*. at 44–45. The Magistrate Judge reasoned as follows:

> Unum asserts driving on the wrong side of the highway and "reckless driving" are crimes (misdemeanors) pursuant to Texas Transportation Code §§ 545.060 and 545.401, respectively. Dkt. No. 21 at 27-28. As pointed out by Unum, two circuit court cases have recently determined that reckless driving prior to an accident that resulted in the driver's death constituted a "crime" and triggered the crime exclusion in an Unum policy. *See Boyer v. Schneider Electric Holdings, Inc*., 993 F.3d 578, 580 (8th Cir. 2021) (a case involving abuse of discretion review where the insured died while "passing vehicles in a no-passing zone and driving approximately 80 miles per hour in a 35 mile-per-hour zone," both misdemeanors under Missouri law); *see also Fulkerson v. Unum Life Ins. Co. of Am*., 36 F.4th 678, 682-84 (6th Cir. 2022) (a cause involving de novo review where the insured was "traveling between 80 and 100 miles per hour, well above the 60 mile per hour speed limit"). Unlike in Boyer and Fulkerson, there is no evidence in the record here to establish that Mr. Lohse was driving in such a way at the time of the crash as to constitute "reckless driving."
>
> Regarding Mr. Lohse's driving on the wrong side of the highway, the only evidence is from the crash report, which provides that Mr. Lohse "was traveling south on US 259 in the north bound lane," the driver of a northbound car "took evasive action and swerved to the left to avoid a head on collision," and Mr. Lohse struck the other car's trailer "in the right back quarter area." AR 145. Although Unum

> acknowledges there are several statutory exceptions to Texas Transportation Code § 545.051, Unum merely asserts the police report does not suggest that any of the statutory exceptions (e.g., to pass another vehicle or avoid an obstruction) were applicable. However, that is insufficient to meet its burden of proving, by a preponderance of the evidence, that the crime exclusion applies.

R&R at 45.

> Unum asserts Mr. Lohse violated three laws, each of which is addressed below:
>
> ***Reckless Driving***. Texas law prohibits "reckless driving"—when a "person drives a vehicle in willful [sic] or wanton disregard for the safety of persons or property." Tex. Transp. Code § 545.104(a). The R&R says the record lacks evidence to establish Mr. Lohse was driving recklessly. R&R at 45. But the police report states that Mr. Lohse drove into oncoming traffic, caused another driver to swerve to miss him, and collided with the other driver's trailer. This is evidence of at least wanton disregard for the safety of persons or property. There is no contrary evidence.
>
> ***Wrong-Way Driving***. A person must "drive on the right half of the roadway." Tex. Transp. Code § 545.051(a). The police report says Mr. Lohse "was traveling south on US 259 in the north bound lane." R&R at 45. This is unrefuted evidence of a violation. The R&R notes the statutory exceptions to liability and says that "Unum merely asserts the police report does not suggest that any of the statutory exceptions . . . were applicable" and that Unum therefore did not meet its burden to show the crime exclusion applies. *Id.* This analysis makes Unum disprove every exception, asking it to prove negatives and flipping the evidentiary burden, which rests with the party asserting an exception applies. *See N.L.R.B. v. Ky. River Cmty. Care, Inc*., 532 U.S. 706, 711, (2001) (stating [the] burden of proving [an] exception [to the general rule of statutory construction] "rests on one who claims its benefits"). Undisputed evidence shows wrong-way driving occurred, and there is no evidence of any exception, so Plaintiff cannot meet his burden to prove an exception applied.
>
> ***Driving in One Lane***. A driver "shall drive as nearly as practical entirely within a single lane" and "may not move from the lane unless that movement can be made safely." Tex. Transp. Code § 545.060(a). It is undisputed that Mr. Lohse moved from his designated lane, and the fact that his action led to a collision demonstrates that his movement could not be made safely.

Docket No. 50 at 7-8 (emphasis original).

Here, the record does not show that Mr. Lohse's death resulted from the commission of a crime. There is no evidence Mr. Lohse was driving while intoxicated or that he was speeding or improperly passing like in the *Fulkerson* and *Boyer* cases. Furthermore, Unum fails to point to any evidence in the Administrative Record to establish that any of the three alleged "crimes" had been or were being committed before Mr. Lohse's death. Unum merely relies on *N.L.R.B. v. Ky River Cmty Care, Inc.*, to argue that the burden falls on Plaintiff to prove that there is an applicable exception to prevent the crime exclusion from applying. 532 U.S. 706, 711 (2001). However, *Kentucky River* had nothing to do with ERISA interpretation, and instead, involved the interpretation of a specific statute under the National Labor Relations Act. *Id.* at 708. Unum's second objection is overruled. On *de novo* review, the Court agrees with the Magistrate Judge that Unum failed to establish beyond a preponderance of the evidence that the crime exclusion warranted a denial of benefits.

## II.     The Court Adopts the Magistrate Judge's Unobjected-to Findings and Conclusions of Law

Neither party objects to the Magistrate Judge's findings and conclusions of law regarding Plaintiff's breach of fiduciary duty claim or Plaintiff's claim for attorneys' fees and costs. *See* R&R at 46–48. The Court finds those unobjected-to findings and conclusions of law are correct and adopts them herein. The unobjected-to findings and conclusions of law by the Magistrate Judge regarding Plaintiff's breach of fiduciary duty claim and Plaintiff's claim for attorneys' fees and costs (R&R at 46–48) would therefore be subject to plain error review on appeal. *See Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)).

**CONCLUSION**

The Court is of the opinion the findings and conclusions of the Magistrate Judge are correct. Accordingly, for the reasons set forth above, it is

**ORDERED** that Unum's objections (Docket No. 50) to the Magistrate Judge's Report and Recommendation are **OVERRULED**. It is further

**ORDERED** that the Magistrate Judge's Report and Recommendation (Docket No. 44) is **ADOPTED** as the opinion of the district court. It is further

**ORDERED** that Unum's motion for summary judgment (Docket No. 21) is **DENIED-IN-PART** as to Plaintiff's claim for wrongful denial of benefits. It is further

**ORDERED** that Plaintiff's motion for summary judgment (Docket No. 22) is **GRANTED-IN-PART** as to Plaintiff's claim for wrongful denial of benefits. Plaintiff is entitled to accidental death benefits. It is further

**ORDERED** that Plaintiff's motion for summary judgment (Docket No. 22) is **DENIED-IN-PART** as to Plaintiff's claim for breach of fiduciary duty. It is further

**ORDERED** that Unum's motion for summary judgment (Docket No. 21) is **GRANTED-IN-PART** as to Plaintiff's claim for breach of fiduciary duty. Plaintiff's claim for breach of fiduciary duty is **DISMISSED**. It is further

**ORDERED** that Plaintiff's motion for summary judgment (Docket No. 22) is **DENIED-IN-PART WITHOUT PREJUDICE** as to Plaintiff's claim for attorneys' fees and costs.

**So ORDERED and SIGNED this 25th day of September, 2023.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE